# XUSPO SENTENCING CONSULTANTS

**Comprehensive Sentencing Mitigation Report**
for
Freedom Vy
Docket No.: 1:23-CR-00405-001

According to the provisions of 18 U.S.C. § 3553, the Court shall impose a sentence that is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing, and in determining such sentence, the Court shall consider, *inter alia*, (1) the nature and circumstances of the offense, and the history and characteristics of Freedom Vy and (2) the need for the sentence imposed, as set forth in § 3553(a)(2).

In consideration of the sentence that must be imposed in this case, Freedom Vy respectfully requests that the Court consider the following information in mitigation of his sentence:

## Sources of Information

- Interviews of Freedom Vy and his father, Kevin Vy
- Plea Agreement and other case materials for the instant offense
- Initial presentence investigation report dated August 16, 2024
- PACER docket entries for 1:23-CR-00405-001

## Current Posture of Freedom Vy

On November 16, 2023, a four-count information was filed against Freedom Vy. Count 1 charges Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); Count 2 charges Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); Count 3 charges Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. §



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

5104(e)(2)(D); and Count 4 charges Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

On June 4, 2024, Mr. Vy appeared before the Honorable Timothy J. Kelly, United States District Court Judge, District of the District of Columbia, and pled guilty to Count 1 of the Information, in accordance with a written plea agreement. At the conclusion of that hearing, a presentence investigation report was ordered. Sentencing has been scheduled for September 24, 2024.

Mr. Vy appeared before the Honorable Zia M. Faruqui, United States Magistrate Court Judge, District of the District of Columbia, for his initial appearance on December 16, 2021. On that same date, he was released with pretrial supervision. According to the presentence investigation report, Mr. Vy has complied with all conditions of his pretrial supervision.

## **Offense Conduct**

On January 6, 2021, a joint session of the United States Congress convened at the Capitol, the exterior of which was closed to members of the public. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020.

As the proceedings continued in both the House and the Senate, with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and U.S. Capitol Police (USCP) officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is defined in 18 U.S.C. § 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

The client, **Freedom Vy**, was a member of the Philadelphia Proud Boys chapter. Between at least November 2020 and January 2021, the President of the



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

Philadelphia chapter was Zachary Rehl, and other members of the chapter included Brian Healion and Isaiah Giddings. The Proud Boys describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other events, some of which have resulted in violence involving members of the group. There is an initiation process for new members of the Proud Boys, and members often wear black and yellow polo shirts or other apparel adorned with Proud Boys logos and slogans to public events.

On December 19, 2020, former President Trump announced plans for a Stop the Steal protest event in Washington, D.C., on January 6, 2021, the date coinciding with Congress's Certification of the Electoral College vote. A handful of other members of the Proud Boys then created a new chapter that would consist of members from across the country. The new chapter was referred to as the Ministry of Self Defense or MOSD. Proud Boys national chairman Enrique Tarrio described the MOSD as a "national rally planning" chapter that would include on "hand selected members."

The following day, Tarrio created a group called MOSD on an encrypted messaging application, which group included other leaders and members of the Proud Boys. By December 30, 2020, **Vy**, using the username "Freedom Reigns," had joined and begun participating in MOSD chats for members.

On January 5, in a new version of the MOSD chat (in which **Vy** also participated), another user sent a message with instructions for the next day: "Everything needs to meet at the Washington Monument at 10am tomorrow morning! Do not be late! Do not wear colors! Details will be laid out at the pre meeting! Come out []as patriot!" Another user told the others to "stand by for the shared baofeng [radio] channel and shared zello channel, no colors, be decentralized and use good judgement until further orders."

In addition to **Vy's** participation in the encrypted message groups for members of the MOSD, **Vy** also participated in an encrypted message group for a small group of Philadelphia chapter members. The encrypted message group was created by Philadelphia chapter president Rehl, which included **Vy**, Healion, and Giddings ("Rehl Telegram Group"). This message group contained messages from as early as November 19, 2020.



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

Rehl, **Vy**, Healion, and Giddings used the Rehl Telegram Group to coordinate their travel to Washington, D.C., for January 6. Their preparations included sharing their blood types. Rehl drove **Vy**, Healion, and Giddings to D.C. on January 5. They arrived in the evening and checked into the Darcy Hotel.

At approximately 10:30 a.m., leaders of the group, including Zach Rehl, organized the men into formation and marched the men away from the planned speeches at the Ellipse – and directly toward the Capitol. **Vy** knew that Vice President was going to be at the Capitol for the certification proceeding that day.

The marching group, including **Vy**, arrived at the Peace Circle, at the edge of the restricted portion of Capitol grounds, at approximately 12:50 p.m. Prior to their arrival, the Peace Circle was uncrowded and relatively peaceful. The First Street pedestrian entrance to the Capitol, which was approximately 100 feet away, was guarded by a handful of Capitol Police officers. Prominent signs posted on metal barriers at the pedestrian entrance and other locations stated, "AREA CLOSED by order of the United States Capitol Police Board."

Rehl and other leaders of the march moved forward and crossed onto Capitol grounds with the crowd. Dozens of others who had marched with **Vy** to the Capitol joined them.

**Vy** also crossed over trampled barriers and advanced toward the Capitol building. **Vy** understood that he was not permitted to be on Capitol grounds. Once there, on the Capitol grounds, **Vy** attempted to remain close to Rehl, Healion, Giddings, and another unidentified individual. The group moved toward the front lines of the rioters, close to the police line. From his position near the front of the crowd, **Vy** was in position to see numerous instances where law enforcement was assaulted with physical violence and aerosol sprays. **Vy** also witnessed law enforcement use crowd control measures against the mob, further evidence that the crowd violated lawful commands to disperse.

Around 2:18 p.m., **Vy** was at the front of the rioters accosting police by calling them traitors. **Vy** joined in, yelling at the officers, "We used to back you guys… We saw you make them [women and children] walk around BLM. I know you signed up for a noble job, you meant well when you signed up… But you guys chose your side… Breaks my heart…"



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

While standing on the Upper West Terrace, Healion stated that he heard that former Vice President Pence had been "evacuated." **Vy** discussed with Rehl, Healion, and Gidding what was going on in the Capitol, at which point Rehl asked the group whether they wanted to go inside the Capitol.

**Vy** understood that he was not allowed inside the Capitol. **Vy** can be heard on video stating, "I think it's a horrible idea, but I'm not letting you guys go alone," referring to going inside the Capitol.

**Vy** accordingly followed Rehl and entered the Capitol. **Vy**, Rehl, Healion, and Giddings entered the Capitol building at approximately 2:53 p.m. through the Senate Wing Door. A loud alarm was sounding in the doorway, and broken glass was on the ground.

After spending approximately twenty minutes inside the Capitol building, **Vy**, Rehl, Healion, and Giddings exited the Capitol building by climbing out through a broken window.

### <u>Codefendants/Related Cases</u>

1:21-CR-00175-003 – Zachary Rehl – Found guilty as to Counts 1, 2, 3, 4, 5, and 6 of the Superseding Indictment on May 4, 2023; Sentenced on August 31, 2023, to 180 months confinement (Counts 1ss, 2ss, and 3ss),  72 months confinement (Count 4ss), 60 months confinement (Count 5ss), and 120 months confinement (Count 6ss), all counts concurrent, followed by 36 months supervised release as to all counts, concurrent, $100 special assessment (all counts).

1:22-CR-00389-001 – Isaiah Giddings – Pled guilty to Count 1 of the Information on December 1, 2022; Awaiting sentencing.

1:23-CR-00230-001 – Brian Healion – Pled guilty to Count 1 of the Indictment on February 22, 2024; Sentenced on July 2, 2024, to 100 days confinement, followed by 36 months supervised release, $100 special assessment, $2,000 restitution.



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

## *Statutory Penalties*

Count 1: Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1)) – 1 year confinement, 1 year supervised release, $100,000 fine, $25 special assessment (Class A misdemeanor)

## *Impact of the Proposed Plea Agreement*

Mr. Vy agrees to plead guilty to Count 1 of the Information: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1).

Mr. Vy agrees that the Government could prove beyond a reasonable doubt their version of the offense as outlined in the "Statement of Offense" portion of the plea agreement.

Pursuant to the plea agreement, the Government agrees to dismiss the remaining counts at the time of sentencing.

The defendant agrees to allow law enforcement agents to review any social media accounts operated by him for statements and postings in and around January 6, 2021, and to conduct an interview of the defendant regarding the events in and around January 6, 2021, prior to sentencing.

There is an agreement as to the advisory guideline calculations; however, there is no agreement as to the defendant's criminal history.

The parties agree that a sentence within the Estimated Guidelines Range would constitute a reasonable sentence in light of all of the factors set forth in 18 U.S.C. § 3553(a), should such a sentence be subject to appellate review notwithstanding specific appeal waivers outlined in the plea agreement. However, the parties agree that either party may seek a variance and suggest that the Court consider a sentence outside of the applicable Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).

The defendant agrees to waive all rights conferred by 18 U.S.C. § 3742.



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

The Court is not a party to the plea agreement and the sentence to be imposed is within the sole discretion of the Court.

The Government has agreed not to seek a change in the defendant's release conditions pending sentencing.

The Government agrees pursuant to USSG §1B1.8(a), that self-incriminating information provided by your client pursuant to this Agreement or during the course of debriefings conducted in anticipation of this Agreement, and about which the Government had no prior knowledge or insufficient proof in the absence of your client's admissions, will not be used by the Government at the time of sentencing for the purpose of determining the applicable guideline range. However, all self-incriminating information provided by your client may be used for the purpose and in accordance with the terms identified in USSG §1B1.8(b).

The defendant acknowledges that the riot that occurred on January 6, 2021, caused as of January 7, 2023, approximately $2,923,080.05 in damage to the United States Capitol, as well as additional losses to the Metropolitan Police Department. The defendant agrees as part of the plea in this matter to pay restitution to the Architect of the Capitol in the amount of $500.

### _Guideline Calculations_

**Count 1**: **Entering and Remaining in a Restricted Building or Grounds**

1. **Base Offense Level:** The guideline for a violation of 18 U.S.C. § 1752(a)(1) is found in USSG §B2.3 of the guidelines, entitled <u>Trespass</u>. Pursuant to USSG §2B2.3(a), the base offense level is 4.                                                          **4**

2. **Specific Offense Characteristics:** Pursuant to USSG §2B2.3(b)(1), if the trespass occurred (vii) at any restricted building or grounds, increase by two levels. Since the trespass occurred at the U.S. Capitol building which, at that time, was restricted to the public, a 2-level increase is warranted.      **+2**

3. **Victim-Related Adjustments:** None.                         **0**



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

4. **Adjustment for Role in the Offense:** None.          **0**

5. **Adjustment for Obstruction of Justice:** None.          **0**

6. **Adjusted Offense Level (Subtotal):**          **6**

7. **Chapter Four Enhancement:** None.          **0**

8. **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a).          **-2**

9. **Chapter Four Adjustment:** Pursuant to USSG §4C1.1(a)(1), the defendant does not qualify for a zero-point offender adjustment.          **0**

10. **Total Offense Level:**          **4**

## *Criminal History*

The United States Probation and Pretrial Services Office completed an initial presentence investigation report in this case on August 16, 2024, and determined that Mr. Vy has a total Criminal History Score of **1**. According to the sentencing table in USSG §5A, a Criminal History Score of **1** establishes a Criminal History Category of **I**.

Upon thorough review of the initial presentence investigation report, Mr. Vy's criminal history score and criminal history category appear to be accurate. It is noted that according to Mr. Vy, his 2011 conviction for simple assault is related to a multi-vehicle accident during which the victim, the driver of the second vehicle (an individual unknown to the defendant), sustained injuries. Pursuant to Pennsylvania Code 18 § 2701(a)(2), a person is guilty of [simple] assault if he negligently causes bodily injury to another with a deadly weapon (in this case – a vehicle). This information is consistent with the information reported in the defendant's presentence investigation report.



|  |  |  |
|---|---|---|
| 10901 Rhode Island Ave. Suite 344 Beltsville, MD 20704 | PHONE | 240-583-1864 |
|  | FAX | 301-567-5727 |
|  | EMAIL | turner@xuspo.com |
|  | WEBSITE | www.xuspo.com |

As reflected in the Other Criminal Conduct section of that report, Mr. Vy was arrested on a fugitive (FTA/contempt) warrant for Aggravated Assault by a Vehicle While Driving Under the Influence. It appears that those charges are related to his 2011 Simple Assault conviction. According to Mr. Vy, he was placed on probation and unintentionally violated that term of supervision by returning to Florida without the express permission of his supervising officer. That term of supervision was eventually transferred to Florida, and then transferred back to Pennsylvania, where he successfully completed that sentence.

Based on a total offense level of **4**, and a criminal history category of **I**, the applicable advisory guideline range in this case is **0-6** months of confinement.

## Application of the 18 U.S.C. § 3553(a) factors

### Freedom Vy's History and Characteristics

The following information regarding Freedom Vy's history and characteristics is offered as a supplement to the presentence investigation report completed by the United States Probation and Pretrial Services Office.

Freedom Vy was born on January 18, 1985, in a refugee camp in Indonesia, to the union of Kevin Vy and Hong Hoang. The defendant's parents were self-described "Vietnamese boat people," or refugees who fled Vietnam by boat after the Vietnam (or American, as it is known to the Vietnamese) War. The defendant's parents' marriage remains intact. The defendant's father (75) is a retired master painter, and his mother (68) is a retired seamstress. They reside together in Henderson, Nevada.

 

Left: The boat that Mr. Vy's family fled Vietnam aboard being hoisted onto a ship
Right: Vietnamese refugees aboard a ship as they sailed to Indonesia



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

The defendant's parents are from Bien Hoa in Southern Vietnam. His father fought in the Army of the Republic of Vietnam (a/k/a the South Vietnam Army), fighting alongside Americans in the Vietnam War. After the war, his father was captured and briefly spent time in a re-education (prison) camp operated by the Communist government of Vietnam. The defendant's family fled Vietnam by boat in September 1984, and resided in a refugee camp in Galang, Indonesia, for more than one year. The defendant's father described his experience in Vietnam after the South collapsed and the communists took over, stating, "It's hard to live with them [the Communist Party of Vietnam]. They control everything. We don't have our freedom. We have to leave for my children's future. In Vietnam, we don't have nothing, they control everything."



The defendant's family at a refugee camp in Galang, Indonesia
Left to right: The defendant's maternal uncle, Phan Hoang; his siblings, Samantha Vy, Paul Vy, Anne Vy, and Dave Vy; and his parents, Kevin Vy and Hong Hoang
(Freedom Vy is in his mother's arms)

The defendant, Freedom Vy, was born in the refugee camp just four months after his family left Vietnam. According to his father, "We [were] looking for Freedom – that's why I give him that name." The defendant's family arrived in the United States in October 1985, when the defendant was only nine months old. His father advised that they initially resided in Pittsburgh, Pennsylvania; however, he and his wife had difficulty obtaining employment as many of the factories and companies were closed. In June 1986, the defendant's family moved to Philadelphia, Pennsylvania, where the defendant was reared by his mother and father, alongside his four siblings.



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

Mr. Vy described his childhood as "good." The defendant and his family resided in West Philadelphia until he was approximately 8 years old, at which time they moved to a neighborhood in Southwest Philadelphia. The defendant's father described the neighborhoods as "so-so." He noted that they lived in mixed (diverse) neighborhoods with a good sense of community. Mr. Vy advised that his childhood neighborhood was safe but that "things started to go downhill" for the city in general during his teenage years.



The defendant and his family at Wildwood Beach in Wildwood, New Jersey
Left to right: Paul Vy, Kevin Vy, Anne Vy, Hong Hoang,
Freedom Vy, Dave Vy, and Samantha Vy

Mr. Vy's parents were very hardworking. They enrolled all five of their children in private (Catholic) school from kindergarten through high school. Mr. Vy speaks very highly of his parents and upbringing. He described his family as "blessed to have hardworking parents that made the money to put us through private school… school [that] aligned with our faith and community." Mr. Vy reported that his basic needs were consistently met throughout his formative years, and he denied any history of childhood abuse or exposure to domestic violence.



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com



The defendant and his family at his sister's first communion
Back row (left to right): Dave Vy and Paul Vy
Front row (left to right): Kevin Vy, Hong Hoang, Freedom Vy, Anne Vy, and Samantha Vy

The defendant was one of five children produced by his parents' union. Mr. Vy's siblings are identified as follows:

| Name | Age | Relationship | Occupation/Residence |
|---|---|---|---|
| Samantha Vy | 48 | Sister | Salon Owner/Williston, ND |
| Paul Vy | 47 | Brother | Computer Programmer/Mansfield, TX |
| *Dave Vy | 44 | Brother | **Rigger/Philadelphia, PA |
| Anne Vy Thai | 41 | Sister | IBM/Springfield, PA |

*The defendant currently resides with his brother, Dave Vy, in Philadelphia, Pennsylvania.
** A rigger is a worker who specializes in the lifting, landing, and assembly of large or heavy objects.

Mr. Vy was reared in a tight-knit family. He reported that he maintains frequent contact with his siblings and parents. According to the defendant's father, they gather as a family multiple times per year for holidays (i.e., Thanksgiving/Christmas) and special occasions.



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

 

Left: The defendant's parents and their children at their vow renewal in approximately 2016
Right: The defendant and his siblings at Christmastime (late 1980s)

When asked about his experience growing up in America as a first-generation immigrant, Mr. Vy responded that he never thought about it since it was all he knew. Mr. Vy and his family felt accepted in their community. The defendant's father noted that it was quite difficult being a first-generation immigrant as everything was so different (i.e., culture, language, community). He explained that he and his wife had to "learn step-by-step."

Mr. Vy married Thao Nguyen in 2006. He advised that they "drifted apart" and divorced in 2010. This marriage did not produce any children, nor does Mr. Vy have any children from any other previous relationship.

Mr. Vy currently resides with his brother, Dave Vy, and his brother's two minor sons (Kristian Vy (11) and Dylan Vy (9)). He has resided in Pennsylvania for the majority of his life.

According to the defendant's father, the defendant's brother, Paul Vy, purchased a home in Winter Haven, Florida, in 2005. That home was purchased so that the defendant's parents could eventually retire to Florida; however, after the recession (2007-2009), their retirement plans changed. Mr. Vy resided in his brother's home from approximately 2005 until 2009, and again from 2011 until 2012. Mr. Vy noted that he returned to Philadelphia, Pennsylvania, in 2009, because his sister was pregnant, he was going through a divorce, and he was feeling homesick.



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

*Physical Condition*

Mr. Vy reported no history of chronic medical conditions and noted he is not prescribed any medications. He denied any physical health concerns.

*Mental and Emotional Health*

Mr. Vy reported no history of mental health issues or treatment. He denied any history of suicidal ideations/attempts, gambling, or childhood abuse.

*Substance Abuse and Treatment*

Mr. Vy noted he consumes alcohol socially (approximately once per month) and denied any history of illicit drug use. Mr. Vy has never participated in alcohol or drug treatment.

*Education*

Mr. Vy graduated from West Catholic High School in Philadelphia, Pennsylvania, in 2003.



West Catholic High School, Philadelphia, Pennsylvania

The defendant attended DeVry University in Fort Washington, Pennsylvania, from 2003 until 2004 (four semesters) and studied computer information systems during that time. He noted that he did not find this course of study stimulating and



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

determined that he was not interested in pursuing a career in the IT field; therefore, he discontinued this program prior to completion.

Mr. Vy studied digital media at the Art Institute of Philadelphia located in Philadelphia, Pennsylvania, in 2004. He noted that he enjoyed digital media but decided that he wanted to do something more "hands on." In 2005, the defendant's brother purchased a home in Winter Haven, Florida, for their parents. Since he did not want the home to sit vacant, he asked the defendant to reside in it in the interim.

In 2005, after relocating to Winter Haven, Florida, and with the desire for a career in the trades, Mr. Vy enrolled in an automotive technician program through the Universal Technical Institute in Orlando, Florida. During that time, Mr. Vy was also working full-time as a hibachi chef. He noted that he would not return home from work until approximately 1:00 am, and was enrolled in courses from 6:00 am to 12:00 pm, on weekdays. As he progressed in his career as a chef, he decided to focus his energy there and did not complete that automotive technician program.

Mr. Vy reported no additional educational or vocational training.

_Employment_

Mr. Vy has been self-employed full-time as a contractor (1099) through Vy Renovations since 2014. He noted he earns approximately $45,000-$50,000 annually.

In November 2023, the defendant began supplementing his income working as a stagehand with the Local 8 (union) in Philadelphia, Pennsylvania. Mr. Vy noted that he earns approximately $1,000 per week in that capacity; however, he advised his hours fluctuate.

Prior to that period of employment, Mr. Vy was employed full-time as a hibachi chef with Kobe Ichiban located in Orlando, Florida, and Kissimmee, Florida, from 2005 until 2009, and then again from 2011 until 2012.

Mr. Vy reported no additional employment history.



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE    240-583-1864
FAX    301-567-5727
EMAIL    turner@xuspo.com
WEBSITE    www.xuspo.com

_Community Support_

Mr. Vy has strong family and community ties. He has spent the majority of his life in the same community; as such, he has a strong network of local friends and supporters.



The defendant's immediate family, along with two of his
paternal uncles, their wives, and their children

Mr. Vy noted that when his father visits him, they attend Good Shepherd Catholic Church in Southwest Philadelphia, Pennsylvania, together. He advised that his faith is very important to him.

The defendant's father noted that while he is disappointed in his son's involvement in the instant offense and was very surprised by his affiliation with the Proud Boys, he supports and loves his son, nonetheless. Given the opportunity, Mr. Vy has the resources and support to contribute positively to his community and society as a whole.

_Sentencing Factors_

The fundamental rule governing consideration for the district court in sentencing is known as the "parsimony principle" and is the directive of Congress that the district court "shall impose a sentence sufficient, _**but not greater than**_



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

*necessary*, to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation."

Criminal sanctions in the United States have four goals: retribution, deterrence, incapacitation, and rehabilitation. Retribution has been achieved through Mr. Vy's federal conviction. The Court's primary concerns at this juncture are deterrence, incapacitation, and rehabilitation.

### *The nature and circumstances of the offense and the history and characteristics of the defendant*

*The Offense*

The instant offense was not a crime of violence; however, acts of violence were committed by others and it is reasonable to assume that Mr. Vy had knowledge of the potential for violence on January 6, 2021, in Washington, D.C. Admittedly, Mr. Vy noted that prior to January 6, 2021, "The country was in pretty bad shape… there was a lot of unrest, a lot of violence going on. I'd seen a lot of people being harassed just based off the color of their skin. Living in Philadelphia, I'd literally seen it every day during that year. I just wanted to keep people safe. I didn't see anything right with how people were being harassed… that whole summer, I saw people being harassed because their skin was white, seeing Asian people getting harassed and assaulted because they were Asian. I just thought it was unacceptable because half of these people were elderly, feeble people, unable to defend themselves… I knew with these rallies… it can get a little rowdy and stuff and everything going through my head was just to keep people safe."

According to the Government's Statement of Offense, Mr. Vy's recorded language towards law enforcement during the instant offense was, "We used to back you guys… We saw you make them [women and children] walk around BLM. I know you signed up for a noble job, you meant well when you signed up… But you guys chose your side… Breaks my heart…" Mr. Vy did not use violent or aggressive language towards law enforcement. In fact, as recorded, when Zachary Rehl asked Mr. Vy and others if they wanted to go inside the U.S. Capitol building, Mr. Vy stated, "I think it's a horrible idea…"



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

17

Mr. Vy has admitted to knowingly entering and remaining on U.S. Capitol grounds when they were closed to the public. As indicated in the presentence investigation report, Mr. Vy agreed to enter the U.S. Capitol building in an attempt to remain close to Zachary Rehl, Brian Healion, Isaiah Giddings, and an unidentified individual, with whom he had traveled to Washington, D.C., that day.

Mr. Vy advised that he did not plan or anticipate entering the U.S. Capitol building prior to traveling to Washington, D.C., on January 6, 2021. He noted that there were thousands of people in the city that day and that cellular coverage was poor at that time. Mr. Vy stated that he was concerned about being separated from the individuals he had traveled with and knew that if he had not stayed with them, he "probably would not have seen them for the rest of the day."

As outlined in the Government's Statement of Offense, the defendant was a member of an encrypted messaging group for the Ministry of Self Defense (MOSD), a national rally planning chapter of the Proud Boys, and an encrypted messaging group for a small group of Philadelphia Proud Boys chapter members. According to the defendant, the Proud Boys were essentially a fraternity or "drinking club." He noted that there are chapters across the nation and that most of them meet once a month to "drink and talk about their problems." Mr. Vy was among the least active participants in the group chats and advised that he did not take most of the conversation seriously. According to the defendant, it was "like bar talk, they're talking bullshit, they're talking reckless... as if they're showing bravado and machoism to the other brothers." Mr. Vy stated that the MOSD group chat and his local chapter small group chat (referenced in the Government's Statement of Offense) were comprised of the members who planned to travel to Washington, D.C., on January 6, 2021, to attend the Stop the Steal protest/rally.

*The Defendant*

Mr. Vy is an educated, hardworking individual with a strong support system. He has one prior conviction that is over a decade old and related to a driving incident. He shows no propensity towards violence and even in the midst of the conduct related to the instant offense, demonstrated evidence of a good conscience and moral values.



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

Mr. Vy is a first-generation immigrant. He was born in a refugee camp in Indonesia, after his family fled Communist-ruled Vietnam, and immigrated to the United States as an infant. The United States is, therefore, the only home he knows. Mr. Vy stated that he has never felt like an outsider and grew up in a community where he and his family were accepted. Mr. Vy has enormous pride in being an American, and the freedoms he is afforded in this country.

Mr. Vy has maintained employment throughout his adult life and has conducted himself as a law-abiding citizen. He has a large family that supports him, as evidenced by his father's words and his brother allowing him to reside in his home throughout the pendency of this case. Mr. Vy has expressed great regret in his affiliation with the Proud Boys, and his actions on January 6, 2021. He does not maintain contact with any individuals associated with the Proud Boys and has deleted all of his profiles on social media platforms.

### *The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense*

A sentence of probation, community service, and a fine, in addition to the restitution outlined in the plea agreement, would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for this offense. While it is of the upmost importance that sentences for cases like the instant offense reflect the seriousness of the conduct they encompass, the need for such must be balanced with a "fair" sentence. Any term of incarceration imposed in this case, will be imposed for the sole purpose of punishment, and while Mr. Vy is guilty of violating the law, and deserving of punishment in this case, a sentence of confinement would be greater than necessary for the purposes of sentencing.

When asked what the most appropriate sentence would be in his opinion, Mr. Vy noted that he understands the Court must impose a sentence, but that he hopes to be allowed to serve any such sentence on probation. He explained that the last three years have been "taxing" and that he has lost many important relationships due to his affiliation with the Proud Boys and the activities surrounding January 6, 2021. Mr. Vy noted that he has fully complied with the conditions of his pretrial supervision and stated, "I do understand the way people need to respect



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

our judicial system and the way the process works." Mr. Vy has expressed great regret for his participation in the activities of January 6, 2021, and has renounced his affiliation with the Proud Boys.

Since the advisory guidelines range in this case falls in Zone A of the Sentencing Table, the guidelines authorize, but do not require, a sentence of probation. A sentence that combines probation, community service, a fine, and restitution would reflect the seriousness of the conduct Mr. Vy engaged in and facilitated, and it would promote respect for the law, all while affording him the opportunity to atone for his mistakes as they relate to the activities of January 6, 2021. This combination sentence would provide Mr. Vy with a degree of stability, allowing him to maintain his employment so that he can repay any fines and/or restitution expeditiously. A sentence of community service would provide Mr. Vy the opportunity to serve others and positively impact his community.

### The need for the sentence imposed to afford adequate deterrence to criminal conduct

According to "the best available evidence… prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen *et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011). At the same time, courts across the country are recognizing the value – to the defendant and the public – of treatment instead of incarceration. Courts are acknowledging that for certain offenders, probation or home detention with cognitive treatment is the appropriate sentence.

The public in general, and those willing to engage in criminal activity, are now aware of the risks of being incarcerated if they commit offenses like the ones committed by Mr. Vy. However, the imposition of a prison sentence is not the most effective way to deter others from committing crimes. Furthermore, deterrence assumes that all people act rationally and think before they act. The notion of deterrence does not take into account the many individuals who commit crimes under the influence of drugs or alcohol, or those whose harmful behavior stems from a mob mentality or fear of separation, like in Mr. Vy's case.

It is nearly impossible to determine how many, if any, individuals were stopped from committing a crime because they were deterred by the prospect of



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

prosecution and punishment, and while the need for deterrence should not be ignored by the Court entirely, it should not be the driving factor for imposing a sentence of confinement in this case.

It is worth noting that in 2020, the U.S. Sentencing Commission published its initial comprehensive study on length of incarceration and recidivism. Of the key findings reported, the Commission found no statistically significant differences in recidivism for federal offenders sentenced to 60 months or less incarceration. In fact, when focusing on the shortest period of incarceration studied (12 to 24 months), the research designs yielded varying results, neither of which were statistically significant nor sufficiently reliable to make evidenced-based conclusions. Based on the Commission's findings, incarceration lengths of greater than 60 months up to 120 months had a deterrent effect in two models, and incarceration lengths of greater than 120 months had a deterrent effect in all models. Since the advisory guidelines range in this case is 0-6 months, based on the data provided by the U.S. Sentencing Commission, it should not be assumed that imposing a sentence of confinement in this case would act as the best form of deterrence.

This Court has sentenced a number of individuals for crimes similar to that of Mr. Vy; however, very few of those individuals were recorded demonstrating good morals and expressing concern about entering the U.S. Capitol building. Mr. Vy has voluntarily removed himself from all social media platforms and any affiliation with the Proud Boys. He has lost relationships that he held dear and has disappointed many of his friends and loved ones. The issue of individual deterrence should not be of concern to this Court, and the issue of general deterrence has been largely achieved through the prosecution of more than 1,400 individuals for conduct related to the activities of January 6, 2021. Nevertheless, we believe that a sentence of probation, community service, a fine, and restitution will adequately and equally serve as an individual deterrence to Mr. Vy and a general deterrence to others.

### *The need for the sentence imposed to protect the community from further crimes committed by Freedom Vy*

We believe that it is greater than necessary for the Court to impose a term of confinement to protect the community from Mr. Vy. Mr. Vy is not a violent offender, nor does he have any inclination to commit similar crimes in the future. Mr. Vy is



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

an individual who made a poor decision in the midst of a good one. He admittedly traveled to Washington, D.C., on January 6, 2021, to exercise his right as an American to participate in a peaceful protest. He noted that he had witnessed increasing violence surrounding protests and rallies in the year prior and hoped to protect others if things escalated that day; however, things quickly got out of hand and the "mob mentality" took over. Mr. Vy entered the U.S. Capitol building with the intention of staying close to those he traveled to Washington, D.C., with, not with the intention of causing physical harm to anyone or damaging any property.

Accordingly, we believe that a sentence of probation, community service, a fine, and restitution will adequately protect the community from further crimes committed by Mr. Vy.

### To provide Freedom Vy with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Mr. Vy can receive any necessary educational/vocational training while under community supervision. Therefore, a term of confinement would not address any issues in Mr. Vy's life in the most effective manner.

Rehabilitation may be the most valuable aspect of sentencing; however, Mr. Vy does not require a significant level of rehabilitation. He is not a drug user, habitual criminal, nor does he have any history of mental health issues. While on pretrial supervision, Mr. Vy has maintained employment, remained drug free, and fully complied with all of the conditions of his pretrial supervision. It is evident that he would benefit far more from community service and life skills training, which he would have access to while on community supervision.

### The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct

One of the most difficult, yet important, factors for the Court to consider is the need to avoid unwarranted sentencing disparities. At the basis of this issue is the American idea of *justice*. Historically, justice has meant there is fundamental fairness in the procedures by which a defendant is tried, convicted, and sentenced



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

and that people who commit similar crimes should receive similar sanctions for their crimes (Crime and Justice in America: A Human Perspective / Leonard Territo, James Halstead, Max Bromley – 3rd ed).

According to Judiciary Sentencing Information (JSIN), during the last five fiscal years (FY2019-2023), there were 48 defendants whose primary guideline was §2B2.3, with a Final Offense Level of 4 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 25 defendants (52%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 2 month(s) and the median length of imprisonment imposed was 1 month. It is noted that based on this information, 48% of similarly situated defendants did not receive a sentence of imprisonment.

According to National Public Radio (NPR), as of August 2024, 1,470 individuals have been charged with federal offenses related to the conduct that occurred at the U.S. Capitol on January 6, 2021. Of those, 922 individuals have pled guilty, 225 were found guilty at trial, and 957 have been sentenced. Of the 957 individuals that have been sentenced, 612 (64%) individuals have received a sentence of imprisonment, and 345 (36%) individuals were found less culpable and received a sentence that did not include a term of imprisonment. When considering Mr. Vy's conduct, his recorded actions and commentary, it is evident that he is among the least culpable in this case.

As of August 30, 2024, 73 defendants have been sentenced after pleading guilty to the exact same offense as Mr. Vy, that is one count of Entering and Remaining in a Restricted Building or Grounds for conduct related to January 6, 2021. The sentences imposed in those cases are summarized as follows: 35 defendants (47.9%) were sentenced to a term of probation, 36 were sentenced to community service (between 40 and 240 hours), a fine was imposed in 16 cases, and nearly all were ordered to pay $500 restitution.

Consistent with national trends, and the available data on similarly situated defendants, we believe a sentence of probation, community service, a fine, and restitution, would avoid unwarranted sentencing disparities in this case.



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

*The need to provide restitution to the victim(s)*

Pursuant to the plea agreement in this case, Mr. Vy acknowledges that the riot that occurred on January 6, 2021, caused as of July 7, 2023, approximately $2,923,080.05 in damage to the United States Capitol, as well as additional losses to the Metropolitan Police Department. As part of the plea in this matter, Mr. Vy has agreed to pay restitution to the Architect of the Capitol in the amount of $500.

By imposing a sentence of probation in this case, Mr. Vy will be afforded the opportunity to maintain his employment so that he can pay the agreed upon restitution, as well as any fine ordered by the Court, in an expeditious manner.

*Conclusion*

In consideration of all factors, we believe there is ample evidence in mitigation to allow the Court to impose a sentence of probation, community service, a fine, and restitution in this case.

We have attempted to fully address the factors outlined in 18 U.S.C. §3553(a), which the Court must consider prior to imposition of sentence. Mr. Vy respectfully requests that the Court utilize this information to impose a sentence that is sufficient, but not greater than necessary, considering his unique history and the characteristics of the instant offense.

This comprehensive sentencing mitigation report was prepared on behalf of Freedom Vy at the request of his counsel, Alfred Guillaume, III, and is submitted in support of sentencing on September 24, 2024, before the Honorable Timothy J. Kelly, United States District Court Judge, for the District of Columbia.

Respectfully submitted,

*Alexandra Vane*

Alexandra Vane
XUSPO Sentencing Consultants
Report completed: September 10, 2024

*Turner R. Mebane, Jr.*

Turner R. Mebane, Jr.
XUSPO Sentencing Consultants
Report Reviewed: September 10, 2024



10901 Rhode Island Ave.
Suite 344
Beltsville, MD 20704

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com